UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DODSON, | No. 2:13-cv-0336-TLN-DAD |
| Plaintiff, | |
| v. | **ORDER** |
| GOLD COUNTRY FOODS, INC, dba TACO BELL #2416 et al., | |
| Defendants. | |

In February, 2013, Plaintiff Robert Dodson ("Plaintiff"), a quadriplegic who requires use of an electric wheelchair, filed a complaint in this Court alleging that he encountered barriers at the Defendant Gold Country Foods, Inc.'s ("Defendant") restaurant located in Placerville, California. Specifically, the Complaint alleges that Plaintiff encountered the following barriers: (1) the access aisles have slopes and/or cross slopes that exceed 2.0%; (2) The access aisle on the right (which makes the space van accessible) is too short; (3) the disabled parking space has slopes and/or cross slopes that exceed 2.0%; (4) the restroom door requires twisting, pinching and/or grasping to operate, thus making it difficult for Dodson to use; (5) the disposable seat cover dispenser is mounted too high; (6) the water closet obstructs the clear floor space required to access the disposable seat cover dispenser; (7) the back grab bar is too short; (8) the toilet tissue dispenser is mounted too high; (9) the toilet tissue dispenser is mounted too far from the

1

back wall; and (10) the pipes beneath the lavatory are improperly and incompletely wrapped. (See Pl.'s Compl., ECF 1 ¶ 10.)   Plaintiff asserts that these alleged barriers violate the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*; the Disabled Persons Act, CAL CIV CODE § 54 *et seq*; the Unruh Civil Rights Act, CAL CIV CODE § 51; and California Health and Safety Code § 19955 *et seq*.  (Id. at 5-10.)  Plaintiff seeks injunctive relief, a declaratory finding that Defendant violated the ADA, statutory damages, attorneys' fees, litigation expenses, and costs.

This matter is before the Court on Defendant's Motion for Summary Judgment.[1]  (See Def.'s Mot. for Summ. J., ECF 35.)  Plaintiff opposes the motion.  (See Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF 38.)  Defendant has filed a reply.[2]  (See Def.'s Reply, ECF 39.)  For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.[3]

## BACKGROUND[4]

Plaintiff is a C-5 quadriplegic who is unable to walk or stand; he must use an electronic wheelchair and personal aide when traveling in public.  (Dodson Decl., ECF 38-2 ¶ 2.)  Defendant is the owner and operator of a Taco Bell Restaurant in Placerville, California.  (SUF #1.)  The restaurant is a public facility, located in an open air shopping center on a main road; it is open for anyone to visit seven days a week.  (SUF #19.)

Prior to filing this lawsuit, Plaintiff visited Defendant's restaurant where he declares he encountered the barriers listed above.  (ECF 38-2 ¶ 4.)  There is no dispute that Taco Bell is a

---

[1]   Because oral argument will not be of material assistance, this matter is ordered submitted on the briefs.  E.D. Cal. L.R. 230(g).

[2]   The Court notes that Defendant also moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure.  However, on July 08, 2011, Defendant withdrew its request for sanctions.  As such, Defendant's motion for sanctions is DENIED as moot.

[3]   The Court notes that Defendant's motion only addresses Plaintiff's claims under the ADA; it does not address Plaintiff's state law claims.  Because the Court finds that there is a genuine dispute of material fact whether some of the alleged barriers violated the ADA, the Court retains supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

[4]   In recounting the relevant facts, the Court will refer to both Defendant's Statement of Undisputed Facts and Plaintiff's "Statement of Genuine Disputes of Material Fact."  (See Def.'s Separate Statement of Undisputed Facts ("SUF"), ECF35-2; Pl.'s Separate Statement of Disputed Facts ("PSUF"), ECF 28-1.)  The Court will also refer the underlying declarations served concomitantly with Defendant's motion and Reply and Plaintiff's Opposition.

1  restaurant which is a place of public accommodation as defined by Title III of the ADA.

2  According to John Larsen, Defendant's director of operations, after the complaint was
3  filed in this case, he measured the access aisle slopes at .4%, 1.0% and 1.6%. (Larsen Decl., ECF
4  35-5 ¶ 4, Exs 1.1, 1.2, and 1.3.) Plaintiff submitted a declaration of Joe P. Card, who declares
5  that he visited the site on December 13, 2013, and "measured slopes and cross slopes of 3.1% and
6  2.9%." (Card Decl., ECF 38-3, ¶ 4, Ex 1.)[5] The access aisles at the time of Plaintiff's visit were
7  19 feet long. (SUF # 7.)

8  Larsen measured the parking slopes at 0.6%, .04%, and 0.1%. (ECF 35-5 ¶ 5, Exs 2.1,
9  2.2, and 2.3.) Card, however, in his declaration, states that he measured the disabled parking
10 space slopes and cross slopes at 4.8%, 2.7%, and 2.3%. (ECF 38-3 ¶ 4, Ex. 3.)

## STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

---

[5]  Both Card and Larsen attached pictures of their measurements to their respective declarations.

1  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
2  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv.
3  Co., 391 U.S. 253, 288-289 (1968).  In attempting to establish the existence of this factual
4  dispute, the opposing party may not rely upon the denials of its pleadings, but is required to
5  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
6  support of its contention that the dispute exists. Fed. R. Civ. P. 56(c).  The opposing party must
7  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
8  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that
9  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
10 the nonmoving party. Id. at 251-52.

11       In the endeavor to establish the existence of a factual dispute, the opposing party need not
12 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
13 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
14 trial." First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce
15 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
16 Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963
17 amendments).

18       In resolving the summary judgment motion, the court examines the pleadings, depositions,
19 answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c);
20 SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing
21 party is to be believed, and all reasonable inferences that may be drawn from the facts placed
22 before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255.
23 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
24 produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight
25 Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).
26 ///
27 ///
28 ///

Finally, to demonstrate a genuine issue that necessitates a fact finder, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

### B.   ADA

Congress adopted the ADA to prevent discrimination against individuals with disabilities. Chapman v. Pier 1 Imports, 631 F.3d 939, 945 (9th Cir.2011). Title III of the ADA mandates that places of public accommodation built or altered after 1993 must be "readily accessible to and usable by individuals with disabilities, including individuals who use wheel chairs." 42 U.S.C. § 12183(a)(2); Rush v. Kim, 908 F.Supp.2d 1117, 1119 (C.D.Cal. 2012). Generally speaking, "a facility is 'readily accessible to and usable by individuals with disabilities' if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines' or 'ADAAG,' which is essentially an encyclopedia of design standards." Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir.2011) (citing 28 C.F.R. § 36.406); Kohler v. Flava Enter., Inc., 826 F.Supp.2d 1221, 1226 (S.D.Cal.2011). An independent federal agency developed the guidelines in 1991 and they were adopted by the Department of Justice (hereinafter, "1991 standards"). Rush, 908 F.Supp.2d 1117 at 1119. "The Access Board revised the standards in 2004 and in 2010 the DOJ adopted these standards as enforceable regulations" (hereinafter, "2010 standards"). Feezor v. Excel Stockton, LLC, 2013 WL 2485623 at *4 (E.D. Cal. June, 10, 2013). Any new constructions or alterations on or after March 15, 2012, must comply with the 2010 standards. Scherr v. Marriott Int'l., 703 F.3d 1069, 1076 (9th Cir.2013); 28 C.F.R. § 36.406(a)(3). Prior to March 15, 2012, both the 1991 and 2010 standards may be used to evaluate compliance with the ADA. Id.

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir.2007).

1  Prior to engaging in the above analysis, however, the court must determine whether the
2  Plaintiff has standing to bring a claim under the ADA.  See Chapman, 631 F.3d at 946 ("[A]s
3  with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled
4  individual claiming discrimination must satisfy the case or controversy requirement of Article III
5  by demonstrating his standing to sue at each stage of the litigation.")    "[W]hen an ADA plaintiff
6  has suffered an injury-in-fact by encountering a barrier that deprives him of full and equal
7  enjoyment of the facility due to his particular disability, he has standing to sue for injunctive
8  relief as to that barrier and other barriers *related to* his disability."  Id. at 944 (emphasis added).
9  Plaintiff can establish standing "either by demonstrating deterrence, or by demonstrating injury-
10 in-fact coupled with the intent to return to a noncompliant facility."  Id.

11  However, it is axiomatic that the alleged barrier must be "related to" the specific
12 disability.  That is, "[b]ecause the ADAAG establishes the technical standards for 'full and equal
13 enjoyment,' if a barrier violating these standards relates to plaintiff's disability, it . . . constitutes
14 discrimination under the ADA."  Id. at 947; see also Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1044
15 (9th Cir. 2007) (citing Massachusetts v. EPA, 549 U.S. 497, 127 S (2007). ("Even if a disabled
16 plaintiff did not know about certain barriers when the plaintiff first filed suit, that plaintiff will
17 have a 'personal stake in the outcome of the controversy' so long as his or her suit is *limited to*
18 *barriers related to that person's particular disability.*") (emphasis added);  Chapman, 631 F.3d at
19 947 ("Of course, a 'barrier' will only amount to [a sufficient] interference if it affects the
20 plaintiff's full and equal enjoyment of the facility on account of his particular disability.");  Parr.
21 V. L&L Drive-Inn Restaurant, 96 F.Supp.2d 1065 (D. Haw. 2000) (Holding that plaintiff, a
22 wheelchair user, did not have standing to bring a claim under the ADA for lack of a braille sign
23 because the alleged violation was not related to his disability.).

24  **ANALYSIS**

25  **A.   Access Aisle Slopes**

26  Defendant moves for summary judgment on this alleged barrier, asserting that "[s]hortly
27 after the Complaint was filed, the access aisle slopes were measured at .4%, 1.0%, and 1.6%,"
28 and thus, complied with both the 1992 and 2010 ADA accessibility guidelines.  (ECF 35-1 at

6

2:26-3:2; see also SUF #5.) Plaintiff maintains that the extent of the slope is in dispute. Specifically, as set forth above, Plaintiff has submitted photographic evidence that Joe Card measured the slope as steep as 3.1%; Plaintiff's counsel also submitted a declaration in which he declares that he measured the access aisle slopes at 3.3%. (ECF 38-3 ¶ 4, Ex. 1; Hubbard Decl., ECF 38-4 ¶ 17(a), Ex. 6.)

In reply, Defendant submitted a supplemental declaration of Karen Blackseth, who declared that her firm measured the highest access aisle slope 1.7%. (Blackseth Decl., ECF 39-3 ¶ 3.) Plaintiff also submitted the declaration of Chris Taylor, CEO of ADA Compliance, Inc. (See Taylor Decl., ECF 39-2.) Mr. Taylor declares that he is "an expert in the field of disabled access." (Id. ¶ 1.) According to his declaration, Taylor personally visited the facility and measured the access aisle slopes ranging from .1% to 2.4%. (Id. ¶ 8.) Mr. Taylor asserts that a slope of 2.4% is permissible under the ADA guidelines because the standards allow for construction tolerances. (Id. ¶ 7.) Specifically, Mr. Taylor states in his declaration that, because the 2013 California Building Code provides that "rounding down for values of less than one-half of a percent shall be permitted. . . . any slope measured at 2.4999 or less is the equivalent of 2% under the CBC, and therefore compliant." (Id.) As such, "[f]rom these measurements, it is [Mr. Taylor's] professional opinion that the . . . access aisle that Plaintiff would likely encounter for purposes of Article III standing is compliant with state and federal accessibility requirements." (Id. ¶ 8.)

In the instant case, the Court finds that a genuine issue of material fact exists as to whether the access aisle slopes were level with surface slopes not exceeding 2.0%, and thus, ADA compliant.[6] Specifically, the parties have submitted contradictory photographic and testimonial evidence regarding whether the slope complied with the accessibility guidelines. The Court acknowledges that a jury is more likely to believe the evidence proffered by Defendant's industry expert, Mr. Taylor. However, on summary judgment, it is improper for the court to make any

---

[6] The parties agree that both the 1991 and 2010 accessibility guidelines provide that access aisles shall be level with surface slopes not exceeding 2%.

7

determination based on the weight and/or credibility of the evidence[7]; the weight and credibility of the evidence is the sole province of the jury.  The standard that guides the Court on summary judgment is whether the evidence proffered by the parties' creates a genuine dispute of material fact that necessitates a jury trial.  Here, a genuine factual dispute lies in the slope of the access aisles; a dispute that must be resolved by a trier of fact in order to determine whether the slope complies with the accessibility guidelines, and thus, the ADA itself.  See Baldwin v. Continental Cas. Co., 2004 WL 2254938 at *8 (N.D. Cal. Oct. 5, 2004) ("On summary judgment, the Court does not weigh the evidence presented and must believe the non-moving party.")   Based on the foregoing, Defendant's motion for summary judgment on Plaintiff's claim as to the access aisle slopes is DENIED.

**B.     Handicap Parking Space Access Aisle Length**

Defendant moves for summary judgment as to this barrier, asserting that "[t]he access aisle is the same length as the parking space." (ECF 35-1 at 3:3-4.)  In support of its contention, Defendant offers the declaration of John Larsen, which states that he measured the access aisle at 19 inches long, the same length as the parking space.  (ECF 35-5 ¶ 5, Ex. 6.)  Defendant notes that the 1991 standards did not articulate a length dimension and the 2010 standards state only that access aisle will be the full length of the parking spaces they serve." (ECF 35-1 at 3:4-7.)

Plaintiff maintains that the access aisles are not ADA compliant because "the parking space and its access aisle are parallelograms, not rectangles"; therefore, Plaintiff maintains the access aisle is too short.  (ECF 38 at 5:24-27.)  Plaintiff argues that "the problem, therefore, is that an access aisle shaped like a parallelogram does not service its parking space in the manner the disabled person needs – i.e., it does not provide sufficient space perpendicular to the lift" utilized by accessible vans, which extends perpendicularly from the passenger side of the van. (Id. at 6:6-12.)

---

[7] The Court notes that Defendant "requests that the Court conduct a hearing under Federal Rule of Evidence 104(a) to evaluate whether Plaintiff's counsel and/or expert have engaged in unreliable methodology to render unsupportable conclusions in submitting fact evidence." (ECF 39 at 5:22-26.)  The Court declines to grant Defendant's request.  Should Plaintiff wish to introduce such evidence at trial, the Court will entertain either a motion *in limine* or a formal objection.

1    In reply, Defendant argues that there is nothing in the guidelines that precludes angled
2    parking handicap parking spaces. (ECF 39 at 6:1-2.) Defendant further asserts that there is
3    sufficient space perpendicular to the lift because "the parking space is parallel to the access aisle,
4    and is the same length, . . ." (Id. at 6:8-11.) Finally, Defendant has proffered ADA diagrams
5    depicting what Defendant maintains are "accessible parking on the diagonal" identical to the
6    parking space Plaintiff complains of in the instant case. (Id. at 6:12-14; Finnerty Decl., ECF 39-
7    1, Ex. G.)

8    Here, the Court agrees with Defendant that Plaintiff's arguments in opposition to its
9    motion as to the access aisle length are specious, particularly Plaintiff's "parallelogram
10   argument." First, and most importantly, Plaintiff has not provided any evidence to rebut
11   Defendant's evidence that the access aisle lengths are the same as the parking spot, which is all
12   that is required under the ADA.[8] This reason alone precludes a finding that Plaintiff has satisfied
13   his burden of demonstrating a genuine issue of material fact. Moreover, the ADA diagrams
14   provided by Defendant depict nearly identical diagonal handicap parking spaces and access aisles
15   as the parking space at issue in the instant case. (ECF 39-1 ¶ 2, Ex. G.)

16   Based on the foregoing, the Court finds that Plaintiff has not met his burden of
17   establishing a genuine dispute of material fact concerning the length of the access aisles. As
18   such, Defendant's motion for summary judgment as to this barrier is GRANTED.

19       **C.    Disabled Parking Space Slope**

20   Defendant moves for summary judgment as to this alleged barrier, asserting that shortly
21   after the complaint was filed, John Larsen measured the parking space slopes at 0.6%, .04%, and
22   0.1%. (ECF 35-5 ¶ 6.) Larsen attached photographs of the measurements to his declaration. (Id.
23   Exs. 2.1, 2.2, and 2.3.) Defendant maintains that both the 1991 and 2010 standards "limit all
24   slopes within an access aisle to 2% maximum" with a 2.1% "conventional industry tolerance."[9]

---

[8] The Court notes that Plaintiff's rectangle versus parallelogram theory is mathematically flawed. That is, simple geometry dictates that, like a rectangle, a parallelogram is a quadrilateral with opposite sides of equal length.

[9] Plaintiff argues that the affirmative defense of industry tolerance does not apply to this barrier. Specifically, Plaintiff argues that "the Department of Justice has recently clarified the issue of industry tolerances in 2013 by publishing that all dimensions are subject to conventional

1   (ECF 35-1 at 3:9-12.) Thus, Defendant insists, the parking space slopes are ADA compliant.

2   Plaintiff maintains that the extent of the slope is in dispute. Joe Card declared that he
3   measured the parking space slopes at 4.8%, 2.7% and 2.3%. (ECF 38-3 ¶ 6.) Mr. Card attached
4   photos of his measurements to his declaration. (Id., Ex. 3.) Plaintiff's counsel also submitted a
5   declaration—with accompanying photographic evidence—stating that he measured the parking
6   space slope at 2.4%. (ECF 38-4 ¶ 17(b), Ex. 7.)

7   In reply, as with the access aisle slopes, Defendant offers the declaration of Chris Taylor,
8   who personally visited the facility and measured the parking space slope ranging from 0.1% to
9   2.1%. (ECF 39-2 ¶ 8.) "From these measurements, it is [Mr. Taylor's] professional opinion that
10  the accessible parking space . . . that Plaintiff would likely encounter . . . is compliant with state
11  and federal accessibility guidelines. (Id. ¶ 9.)\

12  There is no dispute that both the 1991 and 2010 accessibility guidelines provide for a
13  parking space slope no greater than 2.0%. Moreover, *if applicable*, "conventional industry
14  tolerance" provides for a slope no greater than 4.1%.

15  As to this barrier, as with the access aisle slopes, the Court finds that a genuine issue of
16  material fact exists as to whether the parking lot slopes complied with the ADA accessibility
17  guidelines. Again, the parties have proffered contradictory photographic and testimonial
18  evidence regarding whether the slope complied with the relevant guidelines. That is, Defendant
19  has proffered evidence that the parking space slope complies with the guidelines and Plaintiff has
20  proffered evidence that the slope does not comply with the guidelines. As such, Defendant's
21  motion for summary judgment on Plaintiff's claim that the parking slope violates the ADA is
22  DENIED.

23  ///
24  ///

25  ───────────────────────────────
26  industry tolerances *except* where the requirement is stated as a range with specific and maximum
    end points." (ECF 38 at 7:25-8:2.) Plaintiff's argument, however, is irrelevant to the Court's
27  analysis. That is, because Card measured the parking space slope at 4.8%, which is above
    "conventional industry tolerance" of 4.1% in this case, a disputed issue of material fact still exists
28  as to whether the parking space slope is ADA compliant.

>    **D.    Alleged Barrier's Encountered in the Restroom at the Facility: The Water Closet Obstructs Clear Floor to Access Seat Cover Dispensers; the Back Grab Bar is too Short; Placement of the Toilet Paper Dispenser**

Defendant moves for summary judgment as to each of these claims, arguing that Plaintiff lacks Article III standing to assert claims under the ADA for these barriers.  Specifically, Defendant maintains that all of these alleged barriers are related to the use of the toilet; however, Plaintiff, a C-5 quadriplegic, cannot transfer to a toilet seat, and thus lacks standing to assert these barriers. (See 35-1 at 4:4-5:9; ECF 39 at 2:6-4:2.)

Plaintiff does not directly address his personal standing or attempt to demonstrate how the alleged barriers relate to his specific disability; instead, Plaintiff offers a novel theory of standing under the ADA: the alleged barriers make it more difficult for Dodson's aide to empty and sanitize Dodson's colostomy bag and urinary catheter bag.  For example, Plaintiff argues: "In order to access the toilet tissue dispenser, Dodson's aide usually must navigate over and around Dodson's body, in a space which is usually designed for one person.  Because of the difficulty in reaching around Dodson, the standardized placement of sanitary features affects Dodson's aide, which in turn affects Dodson."  (ECF 28 at 11:15-20.)

It is axiomatic that an ADA Plaintiff, as with any "party invoking federal jurisdiction[,] has the burden of establishing that it has satisfied the case-or-controversy requirement of Article III of the constitution; standing is a 'core component' of that requirement." D'Lil v. Best Western Encina Lodge & Suites, 538F.3d 1031, 1036 (9th Cir. 2008) (quoting Lujan v. Defenders of Federal Wildlife, 504 U.S. 555, 560 (1992); see also Excel Stockton, 2013 WL 2485623 at *11 (citing Bender v. Williamsport Area School District, 475 U.S. 534, 541–42 (1986)) (explaining that, in an ADA claim alleging the Plaintiff encountered noncompliant barriers, "[t]he court has no jurisdiction to hear a case in which the plaintiff lacks standing.")  "The defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983).  As set forth in detail above, in order to establish standing to assert a claim that a plaintiff encountered a barrier that violated the ADA, the plaintiff must

demonstrate that the alleged barrier relates to the *particular* disability of the plaintiff asserting the claim. See Chapman, 631 F.3d at 946.

Here, the Court finds that Plaintiff lacks standing to assert claims related to the alleged barriers encountered in the bathroom because they do not relate to Plaintiff's particular disability. Specifically, each of these barriers relate exclusively to access and use of the toilet for the disabled. For example, the seat cover dispenser is a sanitary cover for persons sitting on the toilet and the rear grab bar is intended to assist patrons sitting on and ascending from the toilet seat[10]; the toilet paper dispenser, for obvious reasons, is clearly intended for patrons who have the ability to sit on the toilet itself.

The Court also finds unavailing Plaintiff's contention that he can establish standing to assert these claims through his aide. First, and most importantly, it is axiomatic that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim for relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991); see also Kowalski v. Tesmer, 543 U.S. 125, 134 (2004) (explaining that a plaintiff cannot maintain a federal civil action to redress injuries to others, or to assert the rights of third parties.)

In support of Plaintiff's attempt to establish personal standing through his aide, Plaintiff cites Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081-1082 (9th Cir. 2004). Fortyune, however, is inapposite.

In Fortyune, plaintiff, a C-5 quadriplegic, attempted to attend a movie screening with his wife, who is his "companion" for ADA purposes. Id. at 1078. They arrived at the movie theater approximately 20 minutes prior to show time. Id. The theater contained four wheelchair spaces adjoined with a companion seat,[11] as required by the ADA. Id. When plaintiff and his wife attempted to find a seat, "a man and his son[] who appeared to be neither disabled nor accompanying a wheelchair-bound person, occupied two of the companion seats." Id.

---

[10] The Court reiterates that the only argument Plaintiff forwards in attempting to establish standing is that the alleged barriers affect his aide's ability to assist him.

[11] The companion seat contained a sign on the back that read: "NOTICE—This seat is designated as COMNPANION SEATING for our disabled guest, per ADA Guidelines. It may be necessary to ask non-disabled patrons to move." Id. n.1.

12

1  When asked to vacate the seat, the man refused. Id. When the manager came to assist plaintiff,
2  he informed plaintiff that, pursuant to the defendant's *specific written policy*,[12] "because the
3  movie was sold-out, he could not require the man to vacate the companion seat." Id. at 1097.
4      Fortyune is inapposite for a number of reasons. First, Fortyune, admittedly, does not
5  address the general standing requirements. Instead, because defendant in Fortyune actually
6  conceded that plaintiff satisfied the general standing requirements, the court focused only on
7  plaintiff's "ability to demonstrate a 'real and immediate threat' that the injury will be repeated."
8  Id. at 1081. The court ultimately found that, because of defendant's *written policy* that
9  companion seating may not be available during sold-out shows, contrary to the provisions set
10  forth in the ADA, "the possibility of his injury recurring cannot be said to be so remote as to
11  preclude standing." Id. at 1082. In the instant case, conversely, Defendant specifically argues
12  that Plaintiff cannot establish the general standing requirements. As such, the Court has
13  addressed those requirements above; specifically, the Court has addressed whether the alleged
14  barriers relate to Plaintiff's disability.
15      Second, and more importantly, the circumstances of the Fortyune case critically diverge
16  from the circumstances that gave rise to the instant case. Specifically, plaintiff in Fortyune was
17  deprived of a specific right provided by statute: the right to have available companion seating
18  such that he could view the movie screening next to his wife. See 2010 ADA Standards §§ 221.1,
19  221.3, 802.3; 28 C.F.R. §§ 35.151, 36.406. In other words, the defendant's express written policy
20  of not ensuring companion seating in the case of a sold-out show deprived plaintiff of his specific
21  right under the ADA and its implementing regulations to have his companion sit next to him at
22  defendant's establishment. Conversely, here, there is simply no specific statutory basis for
23  Plaintiff's position that even though the alleged barriers do not relate to his specific disability, he
24  has standing because the alleged barriers make it inconvenient for his aide to assist him in the
25  restroom. Simply stated, Plaintiff cannot establish personal standing because the alleged barriers

---

[12] The policy provided as follows: "In situations in which the auditorium is legitimately 'sold out,' companions of guests using wheelchairs will be exposed to the same risk of less desirable seating as non-disabled couples who are sold 'single' seat. In a sold out situation, everyone shares the same risk of being unable to sit together." Id. n.2.

1  may make it more difficult for his aide—the ADA and its implement regulations are simply
2  devoid of any requirement that public restrooms be designed to provide "convenient" access for a
3  quadriplegic's aide. As such, the Court finds that Plaintiff has not established that he has
4  standing to assert claims under the ADA for encountering the alleged barriers related to the
5  bathroom.

6  Based on the foregoing, Defendant's motion for summary judgment as to the water closet
7  obstruction, the back grab bar, and the toilet location of the toilet paper dispenser is GRANTED.

8  **E.   Moot Barriers**

9  Plaintiff concedes that due to Defendant's remediation efforts, the following barriers
10 alleged in the Complaint are now moot: (1) the alleged noncompliant restroom door handle; (2)
11 the alleged location of the disposable seat cover dispense; and (3) the alleged lack of wrapping on
12 the pipes beneath the lavatory. "Because injunctive relief is the only remedy available under the
13 ADA, 42 U.S.C. § 12188(a)(2), when an alleged ADA violation is remedied, it renders a pending
14 ADA claim moot." Feezor v. Patterson, 896 F.Supp.2d 895, 901 n.4 (E.D. Cal. 2012) (citing
15 Chapman v. Chevron Stations, Inc, 2011 WL 4738309 (E.D.Cal. Oct. 5, 2011)). As such,
16 Defendant's motion for summary judgment as to these three alleged barriers is GRANTED.

17                                **CONCLUSION**

18 Based on the foregoing, Defendant's motion for Summary Judgment is GRANTED in part
19 and DENIED in part. Specifically, Defendant's motion as to the restroom door handle, the
20 placement of the disposable seat cover, the obstruction of the water closet, the length of the back
21 grab bar, and the placement of the toilet paper dispenser is GRANTED; Defendant's motion as to
22 the access aisle slopes and the slope of the disabled parking space is DENIED. Because two of
23 Plaintiff's claims under the ADA survive summary judgment, the Court will continue to exercise
24 supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. No later
25 than August 31, 2014, the parties should advise the Court whether they believe a court-convened
26 settlement conference would be beneficial. If it is the parties' position that such a settlement
27 conference would not be beneficial, they should explain why in five pages or less, whereupon the
28 Court will submit the matter. Either way, the parties' filing should include their preference as to

VDRP, or random selection of a judge in this district.

Dated: August 7, 2014

                        Troy L. Nunley
                        United States District Judge